# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH L. ZINS,                                      Civil Action No. _____

      Plaintiff,

v.

INDIANA UNIVERSITY OF PENNSYLVANIA,

      Defendant.                                JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Joseph L. Zins, by undersigned counsel, file this Complaint, and in support thereof, avers as follows:

### I. Jurisdiction

1.    The jurisdiction of this Court is invoked pursuant to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§12101, *et seq*. as amended; and 28 U.S.C. §§ 1331 and 1343(a)(4).

### II. Venue

2.    Venue is proper in the Western District of Pennsylvania, in that this action arises out of events that occurred in the Indiana County.

### III. Administrative Exhaustion

3.    Plaintiff has satisfied all procedural and administrative requirements set forth in 42 U.S.C. §12102, *et seq*. in that:

    a.    On or about October 28, 2024, Plaintiff filed a timely Charge of Discrimination alleging disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC), which was cross-filed with the Pennsylvania Human Relations Commission (PHRC).

    b.    Plaintiff Received a Notice of Dismissal from the EEOC on April 7, 2025.

    c.    This case was filed within 90 days of receipt of the EEOC Notification of Dismissal.

### III. The Parties

4.    Plaintiff, Joseph L. Zins, is an adult individual residing in Westmoreland County, Pennsylvania.

5.    Defendant, Indiana University of Pennsylvania, is a public university, with its principal place of business at 1011 South Drive, Indiana, Pennsylvania 15705 (Indiana County).

6.    At all times relevant hereto, Defendant is and was an employer within the meaning of the ADA, 42 U.S.C. §§ 12111(2) and (5)(A), as amended, in that it is an employer engaged in an industry affecting interstate commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current and/or preceding year.

7.    At all times relevant hereto, Defendant acted or failed to act by and through its duly authorized agents, servants and employees, who conducted themselves within the scope and course of their employment.

### IV. Factual Background

8.    Plaintiff is a qualified individual with a disability and/or has a record of a disability, Generalized Anxiety and Panic Disorder.

9.    In August 2008, Defendant hired Plaintiff has a part time Assistant Cross Country Track & Field Coach and then in August 2009, Defendant promoted Plaintiff to the position on a full-time basis.

10. In Fall 2020, Plaintiff's immediate supervisor, Athletic Director Todd Garzarelli, began to text Plaintiff outside working hours and remind Plaintiff that Garzarelli was watching him.

11. Garzarelli's conduct caused Plaintiff to feel like Plaintiff was being stalked and caused Plaintiff concern for the safety of the student athletes and himself.

12. In January 2021, for the first time in his life, Plaintiff sought psychological counseling as a result of Garzarelli's harassment.

13. On January 25, 2021, Plaintiff emailed a complaint to Title IX Coordinator Elise Glenn to: (a) address Garzarelli's harassment; (b) advise Defendant that Garzarelli's conduct was exacerbating Plaintiff's Generalized Anxiety; and (c) request a reasonable accommodation of reporting to a different supervisor.

14. Later that day, Glenn called Plaintiff and informed him that the issues in Plaintiff's complaint were not matters handled by the Title IX office.

15. Plaintiff's complaint was referred to Thomas Segar, VP of Student Affairs.

16. On February 12, 2021, Segar called Plaintiff and informed him that he implemented restrictions on Garzarelli's conduct and interactions with Plaintiff, and stated there should not be further issues.

17. As part of the resolution to Plaintiff's complaint, Segar asked Plaintiff if he would agree to continue working with Garzarelli as his supervisor and Plaintiff agreed in an effort to show his good faith in wanting to resolve the problem.

18. In Summer 2021, Defendant appointed Plaintiff to the position of Director of Men's and Women's Cross Country/Track & Field, as a cost saving measure due to the elimination of the full-time Assistant Track & Field Coach position, but did not give Plaintiff

a raise.

19. Garzarelli temporarily followed the restrictions by Segar, he resumed his harassment of Plaintiff in October 2022 by: (a) making threats regarding Plaintiff's employment status; (b) spying on Plaintiff through Zoom meetings; (c) interfeing with Plaintiff's recruiting efforts by changing the availability of certain scholarships; and (d) ignoring concerns regarding the health and safety of student-athletes.

20. On February 14, 2023, Plaintiff met with University President Michael Driscoll and Association of Pennsylvania State College & University President Dennis Frketich regarding Plaintiff's concerns about Garzarelli's treatment of Plaintiff and others

21. President Driscoll did not provide Plaintiff any recommendations on how to improve Plaintiff's work environment or take any action to remediate the situation.

22. June 1, 2023 was the deadline for Defendant to inform Plaintiff if Defendant decided not to renew Plaintiff's employment contract; Defendant did not do so.

23. On June 27, 2023, Plaintiff filed a complaint with Director of Human Resources Lindsey McNickle regarding reoccurring problems with Garzarelli's conduct.

24. On July 13, 2023, Plaintiff met with McNickle and Assistant Director of Human Resources Lorie Albright regarding Plaintiff's complaint

25. McNickle and Albright told Plaintiff that they would facilitate meetings between Garzarelli and Plaintiff in an effort to resolve Plaintiff's concerns, however, Plaintiff believed doing so would only exacerbate his anxiety.

26. On October 25, 2023, Plaintiff met with Segar, McNickle and Albright and renewed his request for a reasonable accommodation of reporting to a different supervisor.

27. Segar promised Plaintiff a response within two weeks but never provided one, thereby failing to engage in the interactive process.

28. On November 7, 2023, four months later, Garzarelli met with Plaintiff and issued Plaintiff his 2022-23 performance review, which did not contain any expectations for the following year (2023-24) and which took place several days after the end of the cross country season.

29. Garzarelli rated Plaintiff "at expectations" for the 2022-23 year.

30. Dissatisfied with some of the content in the 2022-23 performance evaluation, Plaintiff met with:

    a. Segar on January 22, 2024;

    b. Segar, Garzarelli and Business Operations Manager Sherri Yachup on April 5, 2024; and

    c. Segar, Garzarelli and Yachup on April 26, 2024.

31. Towards the end of the April 26, 2024 meeting, Segar abruptly dismissed Plaintiff from the meeting and met with Garzarelli privately.

32. On May 2, 2024, one day before the Pennsylvania State Athletic Conference (PSAC) Outdoor Track & Field Championship conference championships, Garzarelli emailed Plaintiff a letter of non-renewal, called Plaintiff, texted Plaintiff and had Yachup email Plaintiff to make sure Plaintiff was aware of the non-renewal decision.

33. It is uncharacteristic for a coach to receive a notice of non-renewal before the sport's championship.

34. On June 7, 2024, Plaintiff requested a meeting with Segar to discuss the reason for the non-renewal decision.

35. On July 11, 2024, Plaintiff and Dennis Frketich (faculty union president) met with Segar and McNickle, during which time, Plaintiff defended his teams' record and recent improvement. Segar, however, was unprepared to discuss the reasons for the non-renewal decision.

36. On July 18, 2024, Frketich met with Segar regarding Plaintiff and Plaintiff's mental health struggles due to Garzarelli's harassment of Plaintiff.

37. During the meeting, Segar told Frketich that he was unaware of Plaintiff's mental health struggles and that he wanted Plaintiff to send Segar his mental health documentation so that he could re-evaluate Plaintiff's employment status.

38. That same day, Frketich told Plaintiff the result of the meeting and the favorable impression Segar left regarding a likely reversal of Defendant's non-renewal decision.

39. On July 25, 2024, Julie Reese, Head of Labor Relations Department at APSCUF, instructed Plaintiff not to send his mental health documentation to Segar, but instead to contact Assistant Director of Human Resources Anna Shively for any reasonable accommodation requests.

40. On August 14, 2024, Plaintiff's physician provided Shively with a Reasonable Accommodation Request Form.

41. On August 28, 2024, Plaintiff met with Segar, who informed Plaintiff that Defendant would not change the non-renewal decision.

42. On August 29, 2024, Plaintiff met with Shively regarding Plaintiff's request for reasonable accommodation (to report to a different supervisor) and Defendant's decision to deny Plaintiff's request due to an alleged undue hardship.

43. Defendant again failed to engage in the mandatory interactive process with Plaintiff to attempt to determine whether a different reasonable accommodation could be provided.

44. On September 16, 2024, Plaintiff filed a union grievance regarding Defendant's non-renewal decision and failure to provide a reasonable accommodation.

45. On October 3, 2024, Plaintiff met with Garzarelli for his 2023-24 performance review, several months late again.

46. For the first time in Plaintiff's 16-year career, Plaintiff received a "below expectations", despite improvements in the success of the teams Plaintiff coached.

47. On December 12, 2024, without any prompting or involvement by Plaintiff, the men's and women's cross country teams delivered binders containing hundreds of letters from the current team, parents and alumni to Garzarelli, Segar and Driscoll voicing their disagreement and displeasure over Defendant's decision not to renew Plaintiff's contract.

48. Plaintiff's employment will terminate on July 31, 2026 as a result of Defendant's decision not to renew Plaintiff's employment contract.

## COUNT I
## ADA – Discrimination

49. Plaintiff incorporates by reference the allegations of paragraphs 1 through 48 as if fully restated herein.

50. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

51. Defendant terminated Plaintiff because of his disability, record of disability

and/or perceived disability in violation of Section 102(a) of the ADA, 42 U.S.C. §12112(a).

52. Defendant's actions of terminating Plaintiff because of his disability, record of disability and/or perceived disability were undertaken with reckless indifference to Plaintiff's federally protected right to be employed without regard for his disability.

53. As a direct result of Defendant's discriminatory actions in violation of the ADA, Plaintiff has lost wages and other economic benefits of his employment with Defendant, in addition to suffering extreme emotional distress, depression, and like conditions.

WHEREFORE, Plaintiff requests the following:

a. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the ADA;

b. That Defendant be ordered to reinstate Plaintiff to the position he held prior to his termination, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

c. That Defendant be required to compensate Plaintiff for the full value of wages he would have received had it not been for Defendant's illegal treatment of Plaintiff, with pre-judgment interest from the date of termination, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

d. That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

e. That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

f. That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

    g.    That Defendant be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by the ADA;

    h.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

    i.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## COUNT II
## ADA – Failure to Accommodate

54. Plaintiff incorporates by reference the allegations of paragraphs 1 through 53 as if fully restated herein.

55. Defendant denied Plaintiff's requests for a reasonable accommodation (to be assigned to another supervisor and for Plaintiff's supervisor to cease targeting Plaintiff) regarding Plaintiff's known disabilities in violation of Section 102(b) of the ADA, 42 U.S.C. § 12112(b)(5)(A), and 12112(b)(5)(B).

56. Defendant's actions of denying Plaintiff's request for a reasonable accommodation and terminating Plaintiff because of the need to make reasonable accommodations to Plaintiff's known disability were undertaken with reckless indifference to Plaintiff's federally protected right to be employed without regard for his disability.

57. As a direct result of Defendant's discriminatory actions in violation of the ADA, Plaintiff has lost wages and other economic benefits of his employment with Defendant, in addition to suffering extreme emotional distress, depression, and like conditions.

WHEREFORE, Plaintiff requests the following:

    a.    That the Court enter a judgment declaring Defendant's

        actions to be unlawful and in violation of the ADA;

b.   That Defendant be ordered to reinstate Plaintiff to the position he held prior to his termination, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

c.   That Defendant be required to compensate Plaintiff for the full value of wages he would have received had it not been for Defendant's illegal treatment of Plaintiff, with pre-judgment interest from the date of termination, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

d.   That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

e.   That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

f.   That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

g.   That Defendant be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by the ADA;

h.   That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

i.   That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## COUNT III
## ADA – Retaliation

58. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 57 as if fully restated herein.

59. Plaintiff engaged in protected activity when he requested reasonable

accommodations for his disability.

60. Defendant terminated Plaintiff because he engaged in protected activity, in violation of the ADA, 42 U.S.C.A. § 12203.

61. As a direct result of Defendant's retaliation actions in violation of the ADA, Plaintiff has lost wages and other economic benefits of his employment with Defendant, in addition to suffering extreme emotional distress, depression, and like conditions.

WHEREFORE, Plaintiff requests the following:

    a.    That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of the ADA;

    b.    That Defendant be ordered to reinstate Plaintiff to the position he held prior to his termination, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

    c.    That Defendant be required to compensate Plaintiff for the full value of wages he would have received had it not been for Defendant's illegal treatment of Plaintiff, with pre-judgment interest from the date of termination, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits;

    d.    That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

    e.    That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

    f.    That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

    g.    That Defendant be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by the ADA;

h. That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorney's fee; and

i. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted:

**RAMAGE LYKOS, LLC**

*/s/ Colleen E. Ramage*
Colleen E. Ramage
PA I.D. No. 64413

Nikki Velisaris Lykos
PA I.D. No. 204813

RAMAGE LYKOS, LLC
525 William Penn Place
28th Floor
Pittsburgh, PA  15219
(412) 325-7700

cramage@ramagelykos.law
nlykos@ramagelykos.law

Attorneys for Plaintiff